**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

September 23, 2010

Alan J. Nuta, Esq.
702 Russell Avenue
Suite 300
Gaithersburg, MD 20877

Alex Gordon, AUSA
36 S. Charles Street
4th Floor
Baltimore, MD 21201

**Re: Jamie L. Scaletta v. Michael J. Astrue, Commissioner of Social Security, PWG-08-2507**

Dear Counsel:

Presently pending before this Court, by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Ms. Scaletta's claim for Supplemental Security Income ("SSI"). (Paper Nos. 8, 20, 28). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court DENIES the Commissioner's Motion and GRANTS the Plaintiff's Alternative Motion for Remand.

Ms. Scaletta (sometimes referred to as "Claimant" or Ms. Scaletta) applied for SSI on December 17, 2004, alleging that she was disabled since August 21, 2000, due to bipolar disorder, arthritis, diabetes mellitus, degenerative disc disease with chronic back pain, and hypertension. (Tr. 14,55,64,87). Her claim was denied initially and upon reconsideration. (Tr. 33-38). After a hearing held before an Administrative Law Judge("ALJ"), the Honorable Robert W. Young on September 19, 2007, the ALJ denied Ms. Scaletta's claim and concluded in a decision dated December 21, 2007, that Claimant suffered from a mood disorder, diabetes mellitus, degenerative disc disease with

chronic back pain, and hypertension, and that they were "severe" impairments, as defined in the Regulations. The ALJ also found that these impairments did not meet or equal any of the Listing of Impairments("LOI"). The ALJ next found Ms. Scaletta retained the residual functional capacity ("RFC") to perform a range of sedentary work[1]. Based on her RFC, the ALJ found that she was precluded from performing her past relevant work ("PRW"). After receiving testimony from a vocational expert ("VE"), the ALJ found that there were jobs available in the national and local economies, existing in substantial numbers, which Claimant could perform[2]. Accordingly, the ALJ found Claimant was not disabled. (Tr. 12-27). On July 31, 2008, the Appeals Council denied Claimant's request for review, making her case ready for judicial review. (Tr. 5-7).

Claimant argues, *inter alia,* that the ALJ erred in determining her RFC and in finding that there was work she could perform. She also argues that the ALJ improperly rejected the opinions of a state agency physician and erred in presenting hypotheticals to the vocational expert. As explained below, I am persuaded by Claimant's arguments and conclude that the ALJ's decision is not supported by substantial evidence, and therefore DENY the Commissioner's Motion and GRANT the Plaintiff's Alternative Motion for Remand.

The Court finds that the ALJ erred at steps four and five of the sequential evaluation in evaluating Ms. Scaletta's mental RFC and in presenting hypotheticals to the VE. The ALJ failed to discuss whether he considered properly all of the evidence in determining Claimant's RFC. The ALJ found Ms. Scaletta's RFC was as follows:

> "The Claimant has the residual functional capacity to perform the exertional demands of sedentary work with routine, repetitive simple tasks requiring only minimal interaction with the general public." (Tr. 21).

---

[1] The ALJ found Claimant could: "perform the exertional demands of sedentary work with routine, repetitive simple tasks requiring only minimal interaction with the general public." (Tr. 21).

[2] The ALJ found Ms. Scaletta could perform work as an assembler/sorter and order clerk. (Tr. 27).

2

The ALJ documented his specific findings as to the degree of limitation in each of the four areas of functioning described in paragraph(c) of §416.920a[3].(Tr. 20). However the ALJ's discussion of Ms. Scaletta's mental limitations at steps two and three was not an RFC assessment[4], and did not satisfy the ALJ's duties at step 4 of the sequential evaluation. SSR 96-8p, in relevant part, states as follows:

> [T]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria **are not an RFC assessment** but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. **The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process require a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF**. SSR 96-8p (1996 WL 374184, *4(S.S.A.)).(Emphasis added).

Surprisingly, the ALJ referenced the above cited language in his decision.(Tr. 21). However the ALJ's RFC analysis did not include any of the required detailed findings. Rather, the ALJ stated, in conclusory fashion, that Ms. Scaletta could perform "routine, repetitive simple tasks with minimal interaction with the general public." This was not an adequate assessment. *Hilton v. Barnhart* 2006 WL 4046076 (D. Kan.) citing

---

[3] The ALJ found that Ms. Scaletta had the following limitations: "moderately" limited in her activities of daily living; "moderately" limited in social functioning; "moderately" limited in ability to concentrate; and she experienced "one or two" episodes of decompensation. (Tr. 20).

[4] The Introduction to Listing 12.00 *Mental Disorders*, in relevant part, states: "**An assessment of your RFC <u>complements</u> the functional evaluation necessary for paragraphs B and C of the listings <u>by requiring consideration of an expanded list of work related capacities</u> that may be affected by mental disorders when your impairment is severe but neither meets nor is equivalent in severity to a listed mental impairment**." *See* 20 CFR Pt. 404, Subpt.P, App. 1 (emphasis added); *See also* SSR 96-8p (1996 WL 374184).

3

*Wiederholt v. Barnhart*, 121 Fed. Appx. 833 (10th Cir. 2005)(the relatively broad unspecified nature of the description "simple" and unskilled" does not adequately incorporate the more specific findings required).

The primary problem in this case is the ALJ's failure to explain whether, and/or why, he was discrediting the VE's testimony in response to questions that included the detailed assessment of "moderate" mental limitations in five different areas. (Tr. 538-539). Equally important, and another flaw fatal in his decision, is the ALJ's failure to reference or discuss the Mental Residual Functional Capacity Assessment completed by the state agency physician, Dr. Shawn Hales, in his decision. *See* Exhibit 3-F (Tr. 108-110). On May 24, 2005, Dr. Hales reviewed Ms. Scaletta's records and stated that she was "moderately" limited in her abilities to:

> 1) maintain attention and concentration for extended periods;
> 2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
> 3) complete a normal work-day without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and
> 4) accept instructions and respond appropriately to criticism for supervisors;
> 5) get along with co workers or peers without distracting them or exhibiting behavioral extremes. (Tr. 109).

The RFC assessment **must always consider and address medical source opinions.** If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. SSR 96-8p (1996 WL 374184, *7) (S.S.A.))(emphasis added). Since this evidence was not discussed by the ALJ--and since the ALJ did not perform the function-by-function assessment described in SSR 96-8p[5]--the undersigned has no way of knowing whether the ALJ properly considered this evidence and consequently whether this evidence

---

[5] SSR 96-8p, in relevant part, states: Initial failure to consider an individual's ability to perform the specific work-related functions could be critical to the outcome of a case.(1996 WL 374184, *3 (S.S.A.))

4

supports, or conflicts with, the ALJ's finding regarding Ms. Scaletta's RFC. All limits on work related activities resulting from the mental impairment must be described in the mental RFC assessment. SSR 85-16 *Residual Functional Capacity for Mental Impairments* (1985 WL 56855, *2) (S.S.A.)).


According to Social Security Ruling ("SSR") 96-8p, the mental activities required by competitive, remunerative, unskilled work include:

> Understanding, remembering and carrying out simple instructions.
> Making judgments that are commensurate with the functions of unskilled work-i.e., simple work related decisions.
> Responding appropriately to **supervision co workers and usual work situations dealing with changes in the work setting**.

(SSR 96-8p 1996 WL 374184 at *6)(Emphasis added).

The above listed limitations found by Dr. Hales are clearly relevant to unskilled work, but this evidence was not discussed by the ALJ in his decision, and more importantly, when these precise limitations were included in the hypotheticals presented to the VE, the VE stated no work existed for such an individual who had physical (exertional) and the emotional limitations referred to in Exhibit 3-F.(Tr. 536-538).

Simply stated, it is not clear from his decision whether the ALJ properly evaluated Ms. Scaletta's impairments at the fourth or fifth step of the sequential evaluation. *See Baker v. Chater*, 957 F. Supp. 75, 79 (D. Md. 1996)(in evaluating the severity of mental impairments a special procedure must be followed by the Commissioner at each level of administrative review).

Even were I to assume, for arguments sake, that the ALJ adequately evaluated Claimant's mental RFC, a remand would still be required. I also find the ALJ's basis for rejecting the opinions of Claimant's treating Certified Registered Nurse Practitioner, "CRNP" Ms. Lucas, is not supported by substantial evidence.

The ALJ found that the opinions of Ms. Lucas in Exhibit 21-F were entitled to "very little weight". (Tr. 18, 485-494). The ALJ's rationale was that her opinions were: 1) not supported by her treating notes; 2) were inconsistent with the other assessments performed by Dr. Freedenberg and Dr. Taller; and that 3) the "record shows the claimant was seeking a supportive assessment in order to get disability benefits **and the undersigned can not overlook the possibility that Ms. Lucas as the claimants long term mental health provider sympathized with the claimant when making that mental health assessment**." (Tr. 18)(emphasis added).

There is no evidence in the record that would support the ALJ's speculation that Ms. Lucas acted based on sympathy as opposed to her professional judgment when she completed her reports which support greater limitations than those found by the ALJ. Such speculation on the part of the ALJ is improper. *See Hughes v. Barnhart,* 117 Soc. Sec. Rep. Serv. 181, (D. Kan 2007)*(citing McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002));*see also Foxman v. Barnhart*, 157 Fed. Appx. 344, 347, 2005 WL 3150524 (2nd Cir. 2005)(unpublished opinion[8]).

The ALJ acknowledged Ms. Lucas' opinions, but rejected them on a basis that inaccurately describes the factual record. Contrary to what the ALJ stated, the record contains over 85 pages of detailed treatment notes from Ms. Lucas' office which could support her findings since there are several notations of Ms. Scaletta isolating, having a depressed mood, irritability, and inability to sleep since 2003, in addition to the notations of improvement in her symptoms. (Tr. 19, 159, 165, 167, 174, 178,196, 204, 257 264, 506). Even more problematic is the ALJ's unsupported statement:

> "There are a few reports concerning her feelings of guilt and worthlessness and the reference to her intermittent auditory hallucinations in the nature of running commentary reflect her ruminations over death **which the undersigned finds that both the symptoms that might have been improved had she availed herself of the opportunity to participate in outpatient**

---

[8]Although the opinion is unpublished and not precedential, its logic is nonetheless persuasive, and its analysis helpful, by analogy, to resolving this case.

**therapy and had been compliant with her medications**."(Tr. 20)(emphasis added).

The ALJ did not cite -- nor does the undersigned find-- any evidence in the record to support the ALJ's conclusion that her symptoms would have improved if she had been compliant with medications. This is merely gratuitous and improper speculation. For example, on June 27, 2005 Ms. Lucas noted that Ms. Scaletta was "still not sleeping well despite Sonata." Furthermore, the undersigned fails to find notations by any of her treating sources that Ms. Scaletta was non-compliant with her medications. Rather there appear to be several notations of medication changes throughout her treatment. (Tr. 151-169, 257-271). Therefore I am not able to say the ALJ's rejection of Ms. Lucas' opinions is supported by substantial evidence.

Thus, for the reasons given, this Court GRANTS Ms. Scaletta's Alternative Motion for Remand and DENIES the Commissioner's Motion for Summary Judgment. A separate Order shall issue.

_____/s/_____
Paul W. Grimm
United States Magistrate Judge